The PEOPLE of the State of
Colorado, Complainant

v.

Daniel W. CARRIGAN, Respondent.

No. 14PDJ045.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

July 28, 2015.

### OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(b)

On May 18, 2015, a Hearing Board comprising Marna M. Lake and William H. Levis, members of the bar, and William R. Lucero, the Presiding Disciplinary Judge ("the PDJ"), held a hearing pursuant to C.R.C.P. 251.18. Catherine S. Shea appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Daniel W. Carrigan ("Respondent") did not appear. The Hearing Board now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(b)."

### I. *SUMMARY*

Respondent, who admitted many of the People's allegations but did not attend the hearing in this matter, disregarded his duty as a professional in three client matters to obey court orders and to comply with the People's requests for information. In one of those matters, Respondent also failed to meet with his client, failed to communicate with the client about the client's criminal case, and failed to return unearned fees. Considering the totality of the circumstances, the Hearing Board concludes that Respondent should be suspended from the practice of law for three years.

### II. *PROCEDURAL HISTORY*

The People filed a complaint on May 28, 2014, alleging sixteen claims of unprofessional conduct. The People later withdrew three of these claims.[1] Respondent answered the complaint on July 23, 2014. Although the answer was due on June 18, the PDJ accepted it out of time on Respondent's motion. During an at-issue conference on August 14, 2014, a hearing was set for February 5–6, 2015. Respondent submitted an amended answer on August 22, 2014. Respondent's initial disclosures were due on August 28, 2014, but the People advised the PDJ on September 25, 2014, that he had not submitted them.

Nancy L. Cohen entered her appearance for Respondent on October 2, 2014, and with leave of court she filed a second amended answer on Respondent's behalf on January 12, 2015. On January 14, 2015, the People notified the PDJ that Respondent had not served his initial disclosures until October 17, 2014, and that he had just produced copies of client files on January 14, 2015—one day before the discovery cutoff date. By order issued the same day, the PDJ extended the discovery cutoff date to January 23.

On January 21, the PDJ continued the hearing after holding a status conference during which Cohen represented that she had been unable to confer with Respondent to schedule his deposition. The PDJ re-set the hearing for May 18–19, 2015, and established a new discovery cutoff deadline of April 20. Cohen moved to withdraw as counsel on February 18, and the PDJ granted that motion on March 10. The People then filed a motion seeking sanctions against Respondent based on his failure to attend a scheduled deposition and to otherwise participate in the case. On April 28, the PDJ granted the motion in part, barring Respondent from testifying on his own behalf as to the alleged rule violations and from presenting any documentary evidence not disclosed to the People.

---

1. *See* Complainant's Hr'g Br. at 7 ("Complainant withdraws Claim XI, alleging a violation of Colo. RPC 1.4(a)(2), Claim XII, alleging a violation of Colo. RPC 1.4(a)(3), and Claim XIII, alleging a violation of Colo. RPC 1.5(b)."). Accordingly, these three claims are deemed **WITHDRAWN.**

During the hearing on May 18, the Hearing Board heard testimony from Margaret Pearson, David Pearson, Kim Pask, and Karen Bershenyi, and the PDJ admitted the People's exhibits 1–9. The Hearing Board also considered the People's arguments concerning rule violations and sanctions, and Respondent's admissions as set forth in his second amended answer. Respondent did not attend the hearing.

## III. *FINDINGS OF FACT AND RULE VIOLATIONS*

Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on March 1, 2011, under attorney registration number 43029.[2] He is thus subject to the jurisdiction of the Hearing Board in these disciplinary proceedings.[3]

### The Pearson Matter

Around July 25, 2013, David Pearson was arrested on multiple felony weapons charges in Arapahoe County.[4] A jailmate advised Mr. Pearson to retain Respondent, so he directed his mother, Margaret Pearson, to contact Respondent. She did so around August 16, 2013.[5] Ms. Pearson advised Respondent that Mr. Pearson had upcoming hearings on August 28 in Arapahoe County and on September 16 in Denver.[6] Respondent agreed to obtain a disposition of Mr. Pearson's two Arapahoe County cases (12CR1626 and 10CR2841) and two Denver cases (08CR3368 and 10CR2934).[7] As Ms. Pearson explained, Respondent was retained to obtain discovery, explain the charges, figure out what Mr. Pearson's sentences should be, and negotiate pleas in the various courts. As a

courtesy, Respondent told Ms. Pearson that he would also inquire about resolution of a case pending against Mr. Pearson in New Mexico.[8]

Respondent's fee agreement, dated August 17, 2013, states that he will provide Mr. Pearson criminal defense representation in "all open cases" (except the New Mexico case) for a flat fee of $2,000.00.[9] The fee agreement requires an "initial down payment" of $500.00 before Respondent would enter any appearance in court.[10] Under the agreement, the balance is to be paid off "according to the agreed upon payment plan."[11] Ms. Pearson agreed to pay Respondent $500.00 per month.[12] Respondent told Ms. Pearson that $1,000.00 of his fee was for legal services up through the motions practice stage, while the remaining $1,000.00 would cover the rest of the representation.[13] Sometime after their meeting, Ms. Pearson mailed a signed fee agreement and a $500.00 retainer check to Respondent's home address.

Mr. Pearson's first appearance in the Arapahoe County case was on August 28, 2013.[14] Respondent did not appear because he had not received Ms. Pearson's retainer check.[15] At that appearance, Mr. Pearson's preliminary hearing was set for a month hence, on September 26.[16] On September 2, after discovering that her initial mailing to Respondent had been returned as undeliverable, Ms. Pearson hand-delivered the $500.00 check and signed fee agreement to Respondent at his residence.[17]

A hearing was scheduled in Mr. Pearson's Denver case on September 16. According to

2. Compl. ¶ 1; 2d Am. Answer ¶ 1.

3. *See* C.R.C.P. 251.1(b).

4. Compl. ¶ 4; 2d Am. Answer ¶ 4.

5. Compl. ¶ 5; 2d Am. Answer ¶ 5.

6. Compl. ¶ 5; 2d Am. Answer ¶ 5.

7. Compl. ¶ 6; 2d Am. Answer ¶ 6.

8. Compl. ¶ 6; 2d Am. Answer ¶ 6.

9. Compl. ¶ 7; 2d Am. Answer ¶ 7; Ex. 6.

10. Compl. ¶ 8; 2d Am. Answer ¶ 8; Ex. 6.

11. Compl. ¶ 8; 2d Am. Answer ¶ 8; Ex. 6.

12. Compl. ¶ 8; 2d Am. Answer ¶ 8.

13. Compl. ¶ 9; 2d Am. Answer ¶ 9.

14. Compl. ¶ 11; 2d Am. Answer ¶ 11.

15. Compl. ¶ 12; 2d Am. Answer ¶ 12.

16. Compl. ¶ 11; 2d Am. Answer ¶ 11.

17. Compl. ¶ 13; 2d Am. Answer ¶ 13.

Ms. Pearson, Respondent told her that he would let Mr. Pearson's public defender handle the case because he did not want to interfere with the work of the public defender.[18] As a result, Respondent did not enter his appearance at Mr. Pearson's hearing in the Denver case on September 16.[19] Ms. Pearson testified that Respondent did promise, however, to meet with her son after that hearing. But Respondent was late, said Ms. Pearson, and by the time he arrived Mr. Pearson had been sent back to jail. Although, as Ms. Pearson put it, Respondent could have "walked across the plaza" to meet Mr. Pearson, he did not. Ultimately, Respondent never entered his appearance in Mr. Pearson's Denver case.[20]

On September 26, 2013, the date scheduled for Mr. Pearson's preliminary hearing in Arapahoe County, Respondent appeared approximately forty-five minutes to an hour late and entered his appearance on Mr. Pearson's behalf.[21] The parties stipulated to a continuance for another month, until October 28.[22] Respondent had advised Ms. Pearson that he would obtain discovery in Mr. Pearson's cases prior to the September hearing, review it, and discuss the cases with her after the hearing.[23] He did not obtain discovery from the Arapahoe County District Attorney's office until after the hearing, however.[24] Ms. Pearson recalled that Respondent requested she pay for the discovery because he did not have the funds to cover the discovery fee.

On October 1, Respondent left a voicemail message for Ms. Pearson on her home phone, requesting the monthly $500.00 payment.[25]

The next evening, Respondent texted Ms. Pearson, asking to speak with her about her payment.[26] Ms. Pearson responded by text, stating that Mr. Pearson wanted to speak with Respondent about his cases before his mother paid any more money.[27] Respondent told Ms. Pearson via text that he had already "put in a decent amount of time" on Mr. Pearson's case and that he would be happy to visit Mr. Pearson in jail, but not until he received Ms. Pearson's payment.[28]

Respondent last contacted Ms. Pearson in a voicemail message left on October 14, 2013, in which he said that he had not yet received Ms. Pearson's check and that failure to pay him was not a viable option.[29] He also stated that terminating his services would not let Ms. Pearson off the hook for his fees because she had agreed to mediate by signing a binding arbitration agreement.[30] He reminded her that mediating the matter would cost them both a lot of money.[31]

On October 21, 2013, Mr. Pearson filed pro se a "Motion to Substitute Counsel and to Reappoint the State Public Defender [sic] Office to Represent Defendant" in the Arapahoe County case.[32] In his motion, Mr. Pearson states that his mother had terminated Respondent's representation.[33] On October 28, Respondent failed to appear at Mr. Pearson's rescheduled preliminary hearing in the Arapahoe County case.[34] Magistrate Moschetti continued the hearing to the next day, October 29, but Respondent did not appear then, either.[35] Magistrate Moschetti submitted a request for investigation with the Peo-

---

18. Compl. ¶ 14; 2d Am. Answer ¶ 14.

19. Compl. ¶ 14; 2d Am. Answer ¶ 14.

20. Compl. ¶ 15; 2d Am. Answer ¶ 15.

21. Compl. ¶ 16; 2d Am. Answer ¶ 16.

22. Compl. ¶ 16; 2d Am. Answer ¶ 16.

23. Compl. ¶ 17; 2d Am. Answer ¶ 17.

24. Compl. ¶ 17; 2d Am. Answer ¶ 17.

25. Compl. ¶ 18; 2d Am. Answer ¶ 18.

26. Compl. ¶ 19; 2d Am. Answer ¶ 19.

27. Compl. ¶ 19; 2d Am. Answer ¶ 19.

28. Compl. ¶ 20; 2d Am. Answer ¶ 20.

29. Compl. ¶ 23; 2d Am. Answer ¶ 23.

30. Compl. ¶ 23; 2d Am. Answer ¶ 23.

31. Compl. ¶ 23; 2d Am. Answer ¶ 23.

32. Compl. ¶ 24; 2d Am. Answer ¶ 24; Ex. 7.

33. Ex. 7.

34. Compl. ¶ 25; 2d Am. Answer ¶ 25.

35. Compl. ¶¶ 25–26; 2d Am. Answer ¶¶ 25–26.

ple that same day.[36]

The People notified Respondent of the request for investigation in letters dated October 29, November 26, and December 12, 2013, asking for information and Respondent's response.[37] Respondent did not comply with the People's lawful demands for information regarding Magistrate Moschetti's grievance until June 2014.[38]

According to Mr. Pearson, Respondent never spoke or met with him; "it was all through my mom," Mr. Pearson testified. Nor did Respondent perform much, if any, work tangibly benefitting Mr. Pearson or return to Ms. Pearson any portion of the $500.00 she had given him, even though she requested an accounting and a refund when she terminated his services.

■ The Hearing Board concludes the People proved by clear and convincing evidence that through this course of conduct, Respondent violated Colo. RPC 1.3, which provides that a lawyer must act with reasonable diligence and promptness in representing a client. Respondent did not promptly obtain discovery, as he promised Ms. Pearson, nor did he appear for Mr. Pearson's rescheduled preliminary hearing in the Arapahoe County case on October 28, 2013. Respondent also failed to reasonably consult with Mr. Pearson about the means by which his objectives were to be accomplished in violation of Colo. RPC 1.4(a)(2). Although Respondent discussed with Ms. Pearson the nature, scope, and objectives of the representation, he relied on Ms. Pearson, as intermediary, to define his relationship with Mr. Pearson, even though she repeatedly implored him to visit her son. Likewise, we conclude that Respondent breached Colo. RPC 1.4(a)(3), requiring lawyers to keep clients reasonably informed about the status of their matters, when he neglected to speak with, meet with, or otherwise communicate with Mr. Pearson during the time he was retained to represent him, even though Mr. Pearson was detained for at least a portion of that time less than twenty blocks from Re-

spondent's registered business and home address.

■ Respondent also disregarded his obligations under Colo. RPC 1.16(d), which provides that on termination a lawyer must take steps to the extent reasonably practicable to protect the client's interests, including refunding any unearned fees. Respondent performed no meaningful work benefitting Mr. Pearson and did not earn much, if any, of his $500.00 retainer, yet he did not return any unearned funds to Ms. Pearson, and he never provided her with an accounting that documented the fees he had earned.

■ The People next aver that by neglecting to appear at Mr. Pearson's preliminary hearing in Arapahoe County on October 28, 2013, Respondent failed to comport with Colo. RPC 3.4(c), which prohibits a lawyer from knowingly disobeying an obligation under the rules of a tribunal. Respondent was present in Arapahoe County District Court on September 26, when the preliminary hearing was continued to October 28. We can also infer that he did not move to withdraw from the case before that time, as Magistrate Moschetti expected him to appear at the hearing and continued it to the next day so that Respondent could appear. We thus find that Respondent violated Colo. RPC 3.4(c) when he disregarded his obligations under the rules of the tribunal to appear at the preliminary hearing on Mr. Pearson's behalf.

Finally, the People allege that by disregarding their requests for information about this matter, Respondent violated Colo. RPC 8.1(b), which requires lawyers to respond to lawful demands for information from disciplinary authorities. We have no trouble concluding that Respondent flouted his obligations under this rule by ignoring the People's entreaties for information.

### The Allen Matter

On January 18, 2013, Respondent entered his appearance in Arapahoe County District Court case number 2012CR1143 on behalf of defendant Christopher Allen, whose arraign-

---

**36.** Compl. ¶ 28; 2d Am. Answer ¶ 28.

**37.** Compl. ¶ 29; 2d Am. Answer ¶ 29.

**38.** Compl. ¶ 29; 2d Am. Answer ¶ 29.

ment was set for March 1, 2013.[39] Neither Respondent nor Allen appeared for the arraignment.[40] Kim Pask, a court clerk for Judge Christopher Cross, left a message for Respondent that day.[41] Respondent then left a return message, stating that a family emergency would prevent him from appearing in court.[42] Judge Cross continued Allen's arraignment until March 4 "for determination of family emergency, why def[endant] failed to show and resetting of the arraignment."[43]

On March 4, 2013, Respondent did not appear, and Pask left Respondent a voicemail message and an email message.[44] Respondent returned the call and left a message on the evening of March 6.[45] Judge Cross's clerk returned the call on March 7, but Respondent did not respond.[46] On March 15, Respondent appeared for a continued arraignment on behalf of Allen, who again did not appear.[47] A bench warrant issued for Allen's arrest, and Allen was arrested in Denver on April 30.[48] The register of actions in the case suggests that Allen bonded out but was required to return to appear in court on bond on May 15.[49] Allen appeared in court on May 15, and he stated that he had retained Respondent, who did not attend that appearance on Allen's behalf.[50]

Judge Cross set the matter for appearance of counsel on June 21, 2013.[51] Respondent and Allen attended, and the arraignment was set over to July 19.[52] On July 19, with Respondent by his side, Allen entered a plea of not guilty, and trial was set for November 19, with a pretrial conference to be held on November 8.[53]

The day of the pretrial conference—November 8, 2013—neither Respondent nor Allen appeared before Judge Cross.[54] On November 18, Judge Cross mailed to Respondent a letter requesting that within fourteen days he explain his failure to appear.[55] Pask testified that she also called Respondent at three telephone numbers but was not able to reach him. Respondent failed to respond to Judge Cross's letter.[56] In his answer in this disciplinary matter, Respondent explains that because his son was in the hospital at that time, he was not checking his mail.[57]

The Attorney Regulation Committee initiated a request to investigate this matter on December 16, 2013.[58] The People notified Respondent of the request for investigation by letter dated December 19, 2013, and via email on January 6, 2014, requesting information.[59] He did not initially respond to those demands.[60] According to Karen Bershenyi, an investigator for the People, Respondent did not respond to the People's requests until after they had filed the complaint in this matter in June 2014, when he submitted to an interview. Bershenyi also testified that she spoke with Respondent in May 2015, when he informed her that he did not intend to appear at the disciplinary hear-

39.  Compl. ¶ 59; 2d Am. Answer ¶ 59.

40.  Compl. ¶ 60; 2d Am. Answer ¶ 60.

41.  Compl. ¶ 61; 2d Am. Answer ¶ 61; Ex. 1.

42.  Compl. ¶ 61; 2d Am. Answer ¶ 61; Ex. 1.

43.  Compl. ¶ 62; 2d Am. Answer ¶ 62; Ex. 1.

44.  Compl. ¶ 63; 2d Am. Answer ¶ 63; Ex. 1.

45.  Compl. ¶ 63; 2d Am. Answer ¶ 63; Ex. 1.

46.  Compl. ¶ 64; 2d Am. Answer ¶ 64.

47.  Compl. ¶ 65; 2d Am. Answer ¶ 65.

48.  Compl. ¶ 65; 2d Am. Answer ¶ 65.

49.  Ex. 1.

50.  Ex. 1.

51.  Ex. 1.

52.  Compl. ¶ 67; 2d Am. Answer ¶ 67; Ex. 1.

53.  Compl. ¶ 67; 2d Am. Answer ¶ 67; Ex. 1.

54.  Compl. ¶ 68; 2d Am. Answer ¶ 68.

55.  Compl. ¶ 69; 2d Am. Answer ¶ 69.

56.  Compl. ¶ 69; 2d Am. Answer ¶ 69.

57.  2d Am. Answer ¶ 69.

58.  Compl. ¶ 70 2d Am. Answer ¶ 70.

59.  Compl. ¶ 70; 2d Am. Answer ¶ 70.

60.  Compl. ¶ 70; 2d Am. Answer ¶ 70.

ing and that he was not interested in preserving his law license. Respondent has not paid his registration for the current calendar year, Bershenyi said.

■ The People allege that Respondent violated Colo. RPC 3.4(c) by knowingly disobeying an obligation under the rules of a tribunal when he failed to appear for Allen's return of appearance on bond on May 15, 2013, and when he failed to appear for Allen's pretrial conference on November 8, 2013. The Hearing Board concludes that Respondent knowingly flouted his obligation to appear for Allen's pretrial conference; Respondent was present when the pretrial conference was set, but he did not attend it, as he was required to do. We cannot find, however, that Respondent violated Colo. RPC 3.4(c) by missing the appearance on May 15, 2013, as the testimony and evidence before us do not clearly or convincingly establish that Respondent knew that the court date had been set.

■ Next, the People's complaint charges Respondent with violating Colo. RPC 8.1(b) by failing to respond to their lawful requests for information regarding this matter. We agree that Respondent, in violation of Colo. RPC 8.1(b), ignored his obligation as a member of the bar to respond to the disciplinary authorities. Under C.R.C.P. 251.10(a), Respondent was required to file a written response to allegations within twenty-one days after notice of an investigation was provided. But Respondent did not do so, cooperating with the People only several months thereafter, when they had already completed their investigation and filed the complaint.

■ Finally, the People contend that Respondent violated Colo. RPC 8.4(d), which forbids lawyers from prejudicing the administration of justice, when he failed to attend Allen's appearance on bond in May 2013 and the prehearing conference in November 2013.

We conclude that the People did not present any evidence to suggest that Respondent's failure to appear in May 2013 prejudiced the administration of justice. They did, however, show that Respondent's failure to attend Allen's November 2013 prehearing conference caused Judge Cross and his staff to expend time on the matter that they otherwise could have spent on other court business; Judge Cross penned a letter to Respondent seeking an explanation for his non-appearance, while Pask spent time calling several telephone numbers in an effort to contact him.[61] We conclude that Respondent thereby contravened Colo. RPC 8.4(d).

### The Evans Matter

Respondent agreed to represent Debra Ruth Evans in Jefferson County District Court case number 2013CD1068.[62] Evans's arraignment had been continued from an earlier date to August 19, 2013, at which time both she and Respondent failed to appear in court.[63] Respondent asserts that he incorrectly calendared the date of the arraignment.[64] The presiding judge directed a show cause order to be sent to Respondent as to why he failed to appear.[65] Further, as a result of Evans's failure to appear on August 19, 2013, a bench warrant was issued for her arrest with a $1,000.00 cash-only bond.[66] Respondent later advised Evans that he would return to court with her on the bench warrant.[67]

On December 9, 2013, Evans appeared pro se before Chief Judge Stephen M. Munsinger in Jefferson County District Court for the arraignment.[68] Respondent failed to appear.[69] The minute order for that hearing notes that Evans "tried to apply for public defender representation but was told that [Respondent] would need to file a motion to withdraw." That order also states that Evans did not have valid contact information for

61. *See* Exs. 8–9.

62. Compl. ¶ 85; 2d Am. Answer ¶ 85.

63. Compl. ¶ 90; 2d Am. Answer ¶ 90.

64. 2d Am. Answer ¶ 90.

65. Ex. 2.

66. Compl. ¶ 93; 2d Am. Answer ¶ 93.

67. Compl. ¶ 95; 2d Am. Answer ¶ 95.

68. Ex. 3.

69. Ex. 3.

Respondent and had not been in contact with him.[70] Chief Judge Munsinger found that Evans was without counsel and continued the matter.[71] On December 11, Chief Judge Munsinger issued to Respondent an order to show cause, directing him to appear in Jefferson County District Court on December 23 and show cause why he should not be held in contempt of court.[72] Respondent did not appear at the show cause hearing,[73] and Chief Judge Munsinger directed his clerk to refer this matter to the People.[74]

Respondent was given notice of this grievance. Bershenyi testified that Respondent was informed of the matter in February 2014 yet did not respond in writing for another several months, until after the complaint was filed in this matter.

■ The People contend that Respondent violated Colo. RPC 3.4(c) by failing to appear in Evans's case on three separate instances: on August 19, December 9, and December 23, 2013. Although the Hearing Board cannot conclude, based on the evidence before it, that Respondent knowingly disobeyed court orders to appear on August 19,[75] we do find that Respondent knowingly defied orders directing him to appear on December 9 and December 23. We infer that Respondent knew of and was expected to attend the December 9 hearing, as evidenced by Chief Judge Munsinger's issuance of a show cause order. That show cause order was sent to Respondent at 492 South Lincoln Street in Denver, which Bershenyi confirmed was and continues to be listed as his registered business address. Further, Respondent admitted that he did not comply with Chief Judge Munsinger's order to appear on December 23. Respondent therefore violated Colo. RPC 3.4(c).

Next, the People aver that Respondent fell afoul of Colo. RPC 8.1(b) by failing to timely respond to their inquiries concerning the Evans matter. The Hearing Board's analysis of Respondent's failure to respond to the People's inquiries concerning the Allen matter, above, applies with equal force here, and we find that the People have proved this claim.

■ Finally, the People maintain that Respondent's failure to appear on August 19, December 9, and December 23, 2013, prejudiced the administration of justice in breach of Colo. RPC 8.4(d). We agree. Respondent's failure to appear on August 19 required court staff to issue a show cause order to Respondent and a bench warrant for Evans's arrest. Respondent's non-appearances on December 9 and December 23 likewise inconvenienced Chief Judge Munsinger and his staff. As a result of Respondent's December 9 failure to appear, Chief Judge Munsinger sent an order directing Respondent to attend court on December 23. On that date, Respondent was expected to appear in court but did not; as a result, Chief Judge Munsinger's clerk had to take time to lodge a report with the People. Respondent violated Colo. RPC 8.4(d).

## IV. SANCTIONS

■ The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991 & Supp. 1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the determination of sanctions for lawyer misconduct.[76] In imposing a sanction after a finding of lawyer misconduct, the Hearing Board must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted in consideration of aggravating and mitigating factors.

70. Ex. 3.

71. Ex. 3.

72. Compl. ¶ 102; 2d Am. Answer ¶ 102; Ex. 4.

73. Compl. ¶ 106; 2d Am. Answer ¶ 106; Ex. 5.

74. Ex. 5.

75. The People did not present clear and convincing evidence that Respondent possessed the mental state required under the rule to have *knowingly* disobeyed court orders on August 19, as he contends he miscalendared the event, and the People presented no evidence to refute that assertion.

76. *See In re Roose*, 69 P.3d 43, 46–47 (Colo. 2003).

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* Respondent violated his duty to his client Mr. Pearson to promptly refund unearned fees, pursue his matter diligently, and confer about the status of his matter. He also violated the duties that he owed as a professional to the legal system and to his clients by failing to appear in court when required, by knowingly disobeying court-ordered obligations, and by prejudicing the administration of justice.

*Mental State:* Respondent acted knowingly in committing misconduct in the Pearson, Allen, and Evans matters: while he may not have intended to accomplish a particular result, he was consciously aware of the nature and attendant circumstances of his misconduct.

*Injury:* Respondent's lack of communication and diligence harmed Mr. Pearson, who felt deserted by the very person in the legal process whom he most should have been able to trust. Mr. Pearson also testified that Respondent's misconduct prolonged his time in jail awaiting disposition of his cases. As Mr. Pearson explained, every time Respondent failed to appear for a setting the court would continue Mr. Pearson's court dates another month or two. Mr. Pearson would then have to return to jail to await the next court date in order to move his cases forward. Though any unjustified restraint on liberty is a serious matter, we cannot agree that Mr. Pearson's prolonged period of detention is properly attributable to Respondent. It is true that Respondent did not attend Mr. Pearson's first appearance in Arapahoe County on August 28, 2013. He did not attend, however, because he had not yet received a retainer or a signed fee agreement, which itself made clear that he would not enter court appearances without an initial down payment. Respondent attended Mr. Pearson's next court date—September 26—when the parties stipulated to a continuance until October 28. On that date, Respondent failed to appear when he ought to have done so, and the setting was continued to the next day, when Mr. Pearson's motion to substitute counsel was granted and the public defender took over the case. Thus, we can find only that Respondent's misconduct resulted in just one extra night in jail for Mr. Pearson, a night that Mr. Pearson likely would have spent incarcerated even if Respondent had appeared in court.[77] For these reasons, we conclude that Respondent caused Mr. Pearson actual, albeit not serious, injury.[78]

Respondent also brought harm to Ms. Pearson, both financially and emotionally. Not only was she deprived of an accounting or a refund, but she also lived with some fear that Respondent might sue her for the balance of the $2,000.00 under their contract.

In all three matters, Respondent caused the legal system actual injury when he failed to appear for scheduled court dates, resulting in the unnecessary expenditure of court resources and staff time to reschedule proceedings, to attempt to contact Respondent, and to file grievances with the People. Finally, Respondent's decision to ignore the People's requests for investigation inconvenienced them and hampered their efforts to efficiently resolve these matters, obstructing the effective functioning of the attorney regulation system.[79]

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Here, the presumptive sanction is dictated by three ABA *Standards.* First, ABA *Standard* 4.42 calls for suspension when a lawyer knowingly fails to perform services for a

---

77. Ms. Pearson testified that Mr. Pearson was not released from jail until May 2014.

78. Nor do we find that Respondent's misconduct caused potentially serious injury. Because public defenders were available to represent Mr. Pearson after he filed his motion for substitute counsel, we see no potential for serious harm in the Pearson matter. We might have made a finding of potentially serious injury, however, if Mr. Pearson had not promptly been appointed a public defender, or if Mr. Pearson's detention had been more protracted and obviously causally connected to Respondent's misconduct.

79. Because the People have not maintained claims alleging that Respondent violated duties to Allen or Evans—nor did they present any evidence or testimony to quantify or qualify the injury those clients may have suffered—we make no finding about injury as to Allen or Evans.

client and thus causes injury or potential injury.[80] Second, ABA *Standard* 6.22 states that suspension is typically warranted when a lawyer knowingly violates a court order or rule and causes injury or potential injury to a client, or interference or potential interference with a legal proceeding. Third, suspension is also the presumptive sanction under ABA *Standard* 7.2 when a lawyer knowingly engages in conduct that violates duties the lawyer owes as a professional, thereby harming a client, the public, or the legal system.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating factors are considerations or circumstances that may justify an increase in the presumptive discipline to be imposed, while mitigating factors may warrant a reduction in the severity of the sanction.[81] The Hearing Board considers evidence of the following circumstances in deciding the appropriate sanction, and we conclude that three aggravating and two mitigating factors apply.

*Pattern of Misconduct—9.22(c):* Respondent repeatedly failed to appear in court when required in three client matters. He also declined to respond to the People's requests of information as to those client matters. We consider this disconcerting pattern of misconduct a significant aggravating factor.

*Multiple Offenses—9.22(d):* Respondent's failure to honor his duties as an attorney included his failure to communicate with and perform services for Mr. Pearson, his failure to obey court-ordered obligations to appear, and his failure to abide by his responsibilities as a member of the bar to engage with the People and meet their requests. Accordingly, we also apply this factor in aggravation.

*Bad Faith Obstruction of the Disciplinary Proceeding By Intentionally Failing to Comply With Rules of Orders of the Disciplinary Agency—9.22(e):* The People ask

that we consider Respondent's disregard of their repeated requests for information as a bad faith obstruction of the disciplinary process. We decline to do so; Respondent's failure to respond was itself the factual basis for the three claims premised on Colo. RPC 8.1(b) and thus should not be considered as a separate aggravating factor,[82] particularly given that the evidence before us is insufficient to support a finding that Respondent failed to participate because he sought to intentionally obstruct these proceedings.

*Indifference to Making Restitution—9.22(j):* Respondent has made no effort to recompense Ms. Pearson for the funds she forwarded him. We also consider this a factor in aggravation.

*Absence of a Prior Disciplinary Record—9.32(a):* Respondent has not been sanctioned for misconduct before. This mitigating factor is entitled to minimal weight; because Respondent had been practicing for just two years, we find that his clean disciplinary record is of lesser consequence than if he had possessed substantial experience in the practice of law.

*Personal or Emotional Problems—9.32(c):* Though Respondent states in his answer that his son was hospitalized during at least some of the events described above, and there were intimations at the sanctions hearing that Respondent had experienced acute familial misfortune, we have no evidence to substantiate those remarks. We therefore cannot find that Respondent's misconduct was mitigated by those circumstances.

*Inexperience in the Practice of Law—9.32(f):* Respondent was admitted to the Colorado bar in March 2011 and thus qualifies as inexperienced. This, too, is a mitigating factor to which we assign only modest significance; experience in the practice of law is not needed to understand that lawyers are

---

**80.** ABA *Standard* 4.42 pegs the presumptive sanction at suspension. Because we do not make a finding of serious injury, we decline to rely on ABA *Standard* 4.41, which suggests disbarment as the appropriate sanction when a lawyer knowingly fails to perform services for a client and causes that client serious or potentially serious injury.

**81.** *See* ABA *Standards* 9.21 & 9.31.

**82.** *See In re Whitt,* 149 Wash.2d 707, 72 P.3d 173, 180 (2003).

obligated to appear in court for scheduled settings and to respond to court orders.

### Analysis Under ABA *Standards* and Case Law

The Hearing Board is mindful of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[83] since "individual circumstances make extremely problematic any meaningful comparison of discipline ultimately imposed in different cases."[84] Though prior cases are helpful by way of analogy, the Hearing Board is charged with determining the appropriate sanction for a lawyer's misconduct on a case-by-case basis.

The People ask that we impose a suspension of one year and one day. They cite cases, however, pointing to a three-year suspension as a more apt sanction. For instance, a three-year suspension was imposed in *People v. Shock*, where an attorney was suspended for failing to perform any work for two clients and neglecting to tell them about his administrative suspension.[85] An attorney was also suspended for three years in *People v. Henderson*, involving his serious neglect of four clients' legal matters and his failure to keep them informed about their cases, coupled with a conflict of interest and incompetence in one of those matters and a misrepresentation in yet another.[86] Like-

wise, in *People v. Reynolds*, a lawyer was suspended for three years "for chronic neglect of client matters, misrepresentation to clients, dishonesty, misuse of client funds, and assisting a nonlawyer in the unauthorized practice of law."[87]

Our independent scan of case law confirms that the weight of authorities favors a three-year suspension here. The most salient case is *In re Demaray*, which addressed discipline for an attorney who neglected his client's criminal misdemeanor matter.[88] There, Demaray entered his appeared in the case but did not inform his client of the trial setting.[89] Neither Demaray nor his client appeared for trial, and bench warrant issued for his client's arrest.[90] Demaray was also ordered to appear and show cause why he should not be held in contempt, but he did attend the show cause hearing.[91] He also declined to respond to the People's request for investigation.[92] Demaray was found to have violated Colo. RPC 1.3, 1.4(a), 3.4(c), 8.1(b), 8.4(d), and 8.4(h).[93] The Colorado Supreme Court noted that ABA *Standard* 4.41, which calls for disbarment, arguably applied because Demaray caused his client at least potentially serious harm, but it followed the hearing board's recommendation of a three-year suspension, swayed in part by Demaray's inexperience and in part by his lack of prior discipline.[94]

**83.** *See In re Attorney F.*, 285 P.3d 322, 327 (Colo. 2012); *In re Fischer*, 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

**84.** *In re Attorney F.*, 285 P.3d at 327 (quoting *People v. Rosen*, 198 P.3d 116, 121 (Colo.2008)).

**85.** 970 P.2d 966, 966–68 (Colo.1999).

**86.** 967 P.2d 1038, 1042 (Colo.1998).

**87.** 933 P.2d 1295, 1305 (Colo.1997).

**88.** 8 P.3d 427, 427 (Colo.1999).

**89.** *Id.*

**90.** *Id.*

**91.** *Id.*

**92.** *Id.*

**93.** *Id.* at 427–28.

**94.** *Id.* at 428. We also see parallels between this case and *People v. Odom*, 914 P.2d 342 (Colo. 1996), and *People v. Dixon*, 200 Colo. 520, 616 P.2d 103 (1980). In *Odom*, a lawyer was suspended for three years when in one case he failed to keep a client reasonably informed about the status of her case and did not communicate a settlement offer, and in another case rebuffed a client's efforts to communicate, entered into a conflict of interest, and failed to refund unearned portions of a retainer. 914 P.2d at 343–44. He also refused to respond to the disciplinary authorities' inquiries. *Id.* at 344. In *Dixon*, an attorney was met with indefinite suspension for failure to appear at a hearing, failure to respond to the resultant show cause order, failure to

As the Colorado Supreme Court has observed, cases such as this one teeter on the edge of the suspension-disbarment divide, and it is "problematical whether a period of suspension, rather than disbarment, is adequate." [95] Respondent failed to honor his duties to attend his clients' court dates in three criminal matters, and his knowing failure to do so in Mr. Pearson's criminal matter caused Mr. Pearson actual injury. Further, Respondent twice ignored court orders to show cause for his failures to appear, demonstrating a flagrant disregard for the court system and resulting in a waste of judicial resources. His decision not to participate here also evinces an apparent "indifference to, and disregard of, these disciplinary proceedings" [96] and his own license to practice law. On the other side of the ledger, Respondent has no prior disciplinary history and relatively little experience in the practice of law, both mitigating factors that influenced the Colorado Supreme Court's decision in *Demaray*.

Considering the presumptive sanction and the injury caused, the relative imbalance between aggravators and mitigators, the dispositions in similar cases, the People's sanction request, and our own assessment that Respondent has little interest at present in his law license, we exercise our discretion to find that a three-year suspension is warranted here. Suspending Respondent for one year and one day would not account for the injury he caused his clients and the judicial process, nor would it be consistent with other similar cases. But disbarring Respondent, too, would not accord with the presumptive sanction, the case law, or our sense that Respondent should be entitled to prove, in three years' time, that he is fit to practice law once again.

## V. *CONCLUSION*

Lawyers, as officers of the court, are duty bound to honor the directives of the tribunals before which they practice; their failure to do so undermines public confidence in the legal profession and the legal system. Lawyers are also entrusted by their clients to act as their representatives in court proceedings. That position as courtroom representative necessarily entails close communication and collaboration with clients. Here, Respondent breached his responsibilities both to client and to court by failing to appear in three client matters, prejudicing the administration of justice and causing those clients injury. The Hearing Board concludes that Respondent's misconduct warrants a three-year suspension.

## VI. *ORDER*

The Hearing Board therefore **ORDERS**:

1. **DANIEL W. CARRIGAN**, attorney registration number 43092, is **SUSPENDED FOR THREE YEARS.** The **SUSPENSION SHALL** take effect only upon issuance of an "Order and Notice of Suspension." [97]

2. Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)–(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3. Respondent also **SHALL** file with the PDJ within fourteen days of issuance of the "Order and Notice of Suspension" an affidavit complying with C.R.C.P. 251.28(d).

4. The parties **MUST** file any post-hearing motion or application for stay pending appeal with the Hearing Board **on or before Tuesday, August 18, 2015.** No extensions of time will be granted. Any response thereto must be filed within seven days.

5. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** file a "Statement of Costs," **on or before Tuesday, August 11,**

---

communicate with his client, and failure to refund unearned fees. 616 P.2d at 103.

**95.** *People v. Rishel,* 956 P.2d 542, 544 (Colo. 1998).

**96.** *Id.* at 344 (citations and quotations omitted).

**97.** In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

2015. Any response thereto must be filed within seven days.